| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Kevin T. Simon, Esq.   SBN 180967<br>SIMON & RESNIK, LLP<br>15233 Ventura Blvd., Suite 300<br>Sherman Oaks, CA 91403<br>Tel: (818) 783-6251<br>Fax: (818) 783-6253<br>E-mail: kevin@simonresniklaw.com<br><br>☑ *Attorney for Debtor(s)*<br>☐ *Debtor(s) appearing without an attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**

| In re:<br><br><br>KURT KRUEGER<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 1:11-bk-14067-AA<br><br>CHAPTER: 13<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**<br><br>DATE: 8/25/2011<br>TIME: 9:00 am<br>COURTROOM: 303<br>FLOOR: 3rd |

1. TO: The Honorable Alan M. Ahart,  The Chapter 13 Trustee and All Interested Parties

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief set forth in the Motion and accompanying supporting documents served and filed herewith.

3. Hearing Location:  ☐ 255 East Temple Street, Los Angeles  ☐ 411 West Fourth Street, Santa Ana
    ☑ 21041 Burbank Boulevard, Woodland Hills  ☐ 1415 State Street, Santa Barbara
    ☐ 3420 Twelfth Street, Riverside

4. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (*If you do not have an attorney, you may wish to consult one.*)

5. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2011*                    Page 1                    **F 4003-2.4.MOTION**

a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: 7/20/2011

SIMON & RESNIK, LLP.
Printed name of law firm *(if applicable)*

Kevin T. Simon
Printed Name of Individual Debtor
or Attorney for Debtor

Signature of Individual Debtor
or Attorney for Debtor

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                                Page 2                                **F 4003-2.4.MOTION**

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
**(DEBTOR: KURT KRUEGER                                          )**

**NAME OF CREDITOR HOLDING JUNIOR LIEN (Respondent):** Green Tree Servicing, LLC., its
Successors and/or Assigns

1. **Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien)
   encumbering the following real property (Property), which is the principal residence of debtor.

   Street address:          11923 West Trail

   Unit number:

   City, state, zip code:   Sylmar, CA  91342

   Legal description of Property or document recording number (*including county of recording*):

   _____

   _____

   ☑ See attached page for legal description of Property or document recording number.

2. **Case History:**

   a. A voluntary petition under chapter ☐ 7 ☐ 11 ☐ 12 ☑ 13 was filed on (*specify petition
   date*): 4/1/2011          .

   b. ☐ An Order of Conversion to chapter 13 was entered on (*specify date*): _____.

3. **Grounds for Avoidance of Junior Lien:**

   a. As of (*date of title review*) 7/20/2011          , the Property is subject to the following liens in the amounts
   specified securing the debt against the Property that the debtor seeks to have treated as indicated:

   (1) (*Name of holder of 1st lien*) CitiMortgage                          in the amount
   of $ 229,590.20          .

   (2) (*Name of holder of 2nd lien*) Green Tree Servicing, LLC.          in the amount
   of $ 243,424.91                    ☑ is ☐ is not  to be avoided;

   (3) (*Name of holder of 3rd lien*) _____          in the amount
   of $ _____ ☐ is ☐ is not  to be avoided;

   ☐ See attached page for additional lien(s).

   As of (*date of valuation/appraisal*) 7/6/2011          , Property is worth no more than (*value per
   valuation/appraisal*) $ 220,000.00          .

   b. As a result, each Respondent's Lien encumbering the Property is wholly unsecured.

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2011*                              Page 3                              **F 4003-2.4.MOTION**

c.  **Evidence in Support of Motion:**

(1) ☑ The amount of the lien identified in paragraph 3(a)(1) is based on (*type of evidence*)
    Recent Billing Statement_____, attached hereto and identified as Exhibit _A_ .

(2) ☑ The amount of the lien identified in paragraph 3(a)(2) is based on (*type of evidence*)
    Proof of Claim 2-1_____, attached hereto and identified as Exhibit _B_ .

(3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on (*type of evidence*)
    _____, attached hereto and identified as Exhibit ___ .

(4) ☑ The relative priority of the liens encumbering the Property is established by evidence attached as
    Exhibit C&D

(5) ☑ The value of the Property from paragraph 3(b) is based on (*type of evidence*)
    _Appraisal_____, attached as Exhibit _E_ .

(6) ☑ Debtor submits the attached Declaration(s).

(7) ☐ Other evidence (*specify/identify supplemental evidence*): _____
    _____, attached as Exhibit ___ .

d.  **WHEREFORE, Debtor prays that this Court issue an Order granting this Motion and establishing
    that**:

(1) The Property is valued at no more than (*requested value*) $ 220,000.00_____ .

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance
    payments are not to be made, before the Debtor's ☑ completion of the chapter 13 plan, or ☑ receipt of a
    chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured
    claim(s) in the amount per filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon:  Debtor's ☑ completion of the
    chapter 13 plan, or ☑ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the
    corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the
    conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or
    if the Property is sold or refinanced prior to the Debtor's ☑ completion of the chapter 13 plan or ☑ receipt of
    a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest
    and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and
    receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than
    necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior
    lien(s).

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                                          Page 4                                **F 4003-2.4.MOTION**

e.    ☐  See attached continuation page for additional provisions.

Date:  7/20/2011

Respectfully submitted,

By: _____
Signature of Debtor or Attorney for Debtor

Name:  Kevin T. Simon_____
Printed Name of Debtor or Attorney for Debtor

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2011                                    Page 5                          F 4003-2.4.MOTION

### DECLARATION OF KURT KRUEGER IN SUPPORT OF
### MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE OF
### GREEN TREE SERVICING, LLC.

1.      I, KURT KRUEGER, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness could and would competently testify to the truthfulness of all of the below statements.

2.      I am the Debtor in the instant bankruptcy proceeding, case number 1:11-bk-14067-AA.

3.      I filed bankruptcy to save my principal residence located at 11923 West Trail, Sylmar, CA  91342 ("Property").

4.      Based on my personal knowledge and experience, I believe the Property is worth no more than $220,000.00.

5.      I have a senior deed of trust with CitiMortgage, recorded on or about July 31, 2011, with a current balance of approximately $229,590.20. (Attached hereto and incorporated herein is a true and correct copy of the recent billing statement from CitiMortgage, showing the current balance as Exhibit "A" and Deed of Trust as Exhibit "C".).

6.      I also have a junior deed of trust with Green Tree Servicing, LLC., recorded on or about June 28, 2005, with a current balance of approximately $243,424.91. (Attached hereto and incorporated herein is a true and correct copy of Proof of Claim 2-1 filed by Green Tree Servicing, LLC., showing the current balance as Exhibit "B" and Deed of Trust as Exhibit "D."). I have not made any payments on the junior deed of trust since filing this case.

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on July 20, 2011, at Sherman Oaks, California.

Kurt Krueger

## DECLARATION OF JENNIFER BOSCO IN SUPPORT OF MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE OF GREEN TREE SERVICING, LLC.

1.    I, JENNIFER BOSCO, a licensed appraiser, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all of the below statements.

2.    I am making this declaration in support of the Motion to Avoid Junior Lien on Principal Residence of Green Tree Servicing, LLC..

3.    On or about July 6, 2011, I appraised real property located at 11923 West Trail, Sylmar, CA  91342 (hereinafter "Subject Property").

4.    Pursuant to my appraisal, the value of the Subject Property on or about July 6, 2011 was valued at $220,000.00. (Attached hereto and incorporated herein as Exhibit "E" is a true and correct copy of my appraisal of the Subject Property.).

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on July 20, 2011, at Sherman Oaks, California.

_____
Jennifer Bosco

BEING that land situated in the State of California, County of Los Angeles, City of San Fernando, and described as follows:

BEING Lot 425 in Tract No. 7342, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 90, Pages 24 to 26, inclusive of Maps, in the Office of the County Recorder of Los Angeles County, California.

**FOR INFORMATIONAL PURPOSES ONLY**
THE property address being known as No. 11923 West Trail, Sylmar, California 91342.

APN: 2526-009-003

EXHIBIT "A"

**Account Information**

nent Date: 05/17/11
ty Address: 11923 WEST TRL
SYLMAR CA 91342

Page 1 of 1

## CitiMortgage 

INT NUMBER: 0001990408-5

FIXED RATE LOAN

| | |
|---|---|
| of Mortgage | $229,590.20 |
| al Balance | |
| st Rate | 7.00000% |
| st Year to Date | $6,732.99 |

Customer service 1-800-283-7918*
*Calls are randomly monitored and recorded to ensure quality service.

SIS0079D-285011372011AA03-05/17/11-S-003915-1

KURT A KRUEGER
TERESA A KRUEGER
11923 WEST TRL
SYLMAR CA 91342-6514

### Account Activity

| | PAYMENTS RECEIVED | MONTHLY PAYMENT AMOUNT 06/01/11 |
|---|---|---|
| al | | $429.08 |
| st | | $1,334.31 |
| r | | $341.95 |
| **Amount** | | **$2,105.34** |

nvenience for accounts serviced in our Bankruptcy Department, the amount
ove represents only the payments due for the following month. There may
r payments or charges due that are not listed above. Those amounts may
ded in your Chapter 13 Plan, if applicable.

Visit us at www.citimortgage.com!

### Monthly Highlights

If you do not wish to receive future informational notices please contact the Bankruptcy
Service Center.

THIS MORTGAGE ACCOUNT STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY,
AS THIS DEBT MAY HAVE BEEN INCLUDED IN A BANKRUPTCY ACTION, OR MAY
HAVE BEEN DISCHARGED. THIS IS NOT AN ATTEMPT TO COLLECT, RECOVER, OR
OFFSET THE MORTGAGE INDEBTEDNESS AGAINST YOU PERSONALLY. IF YOU ARE
REPRESENTED BY AN ATTORNEY, PROVIDE A COPY OF THIS STATEMENT TO YOUR
ATTORNEY AND CHAPTER 13 TRUSTEE, IF APPLICABLE.

CITIMORTGAGE RESERVES THE RIGHT TO SUPPRESS ACCESS TO THE MORTGAGE
WEBSITE.

Send supplemental tax bills to CMI for payment. All supplemental tax bills and special
property assessments that you receive must be forwarded to our Tax Department at least 15
days prior to the tax installment due date in order for these payments to be made on time.
Failure to forward your bill can result in additional penalties and interest charges to your
escrow/impound account. Please write your account number on these tax bills and mail them
(Certified or Registered) to our Tax Department at the address on the back of this billing
statement. Thank you.

Your monthly escrow payment has been adjusted to $341.95 effective 06/01/11.

---

### Detach and return the bottom portion with payment.

ount Number:    0001990408-5

RT A KRUEGER
se designate how you want us to apply any additional funds.
esignated funds first pay outstanding late charges and fees, then
cipal. Once paid, additional funds cannot be returned.

se check box to indicate mailing address/phone number changes
enter on reverse side.
ude account number on check and make payable to:

CITIMORTGAGE, INC.
PO BOX 689196
DES MOINES IA  50368-9196

| See detail below: | Due Date: 06/01/11 | Total Amount Due: $2,105.34 |
|---|---|---|
| Additional Principal: | $ | |
| Additional Escrow: | $ | |
| | $ | |
| Additional Monthly Payment: | $ | |
| Total Amount Enclosed: | $ | |

**Please do not send cash. Please allow 7 to 10 days for postal delivery.**
To ensure timely processing of your mortgage payment, please use the enclosed envelope and coupon. Do not include account inquiries with your payment.

EXHIBIT "B"

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Central District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Kurt A. Krueger | Case Number:<br>11-14067 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**GREEN TREE SERVICING, LLC.**

Name and address where notices should be sent:

**7360 S. KYRENE RD. RECOVERY DEPT. T-120
TEMPE, ARIZONA 85283**

Telephone number:
**(866) 270-3285**

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

**345 SAINT PETER STREET L800R
SAINT PAUL, MINNESOTA 55102**

Telephone number:
**(877) 256-4871**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $_____243,424.91_____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** **Money Loaned**
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** **1036**

  3a. **Debtor may have scheduled account as:** **Wilshire**
  (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:**$_____ **Annual Interest Rate**___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: $   **58,624.44**   **Basis for perfection:**_____

**Amount of Secured Claim:** $   **243,424.91**   **Amount Unsecured:** $_____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: **Documents available upon request**

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>04/18/2011 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s/ HERSCHEL HOYT<br>BANKRUPTCY SUPERVISOR | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 1:11-bk-14067-AA    Claim 2-1    Filed 04/18/11    Desc Main Document    Page 2 of

# PRE PETITION ARREARS BREAKDOWN

| | |
|---|---|
| ACCOUNT NAME: | Kurt A Krueger |
| ACCOUNT NUMBER: | xxxx1036 |
| CASE NUMBER: | 11-14067 |
| STATE/DISTRICT: | Central District of California |
| PROPERTY ADDRESS: | 11923 West Trl Sylmar Ca. 91342 |

| | | AMOUNT |
|---|---|---|
| PRE-PETITION PAYMENTS: | monthly payment | $2,093.73 |
| months past due From:12/01/08  to: 03/01/11 | | 28 |
| | TOTAL | $58,624.44 |

| | AMOUNT | REASON |
|---|---|---|
| FEES AND COSTS | | late fees |
| | | bpo fee |
| | | legal cost |
| TOTAL: | $0.00 | |

**TOTAL ALL PRE-PETITION ARREARS TO BE INCLUDED ON POC REFERRAL**

| | |
|---|---|
| TOTAL PAYMENTS DUE: | $58,624.44 |
| TOTAL FEES AND COSTS: | $0.00 |
| | $58,624.44 |

**Account information:**

| | |
|---|---|
| Date Loan Incurred: | 6/16/2005 |
| status: | Loan accelerated to charge off for non-payment |
| Payoff at filing: | $243,424.91 |
| Prin Balance at filing: | $243,424.91 |

| | |
|---|---|
| DATE PREPARED: | 04/18/11 |
| PREPARED BY: | Herschel Hoyt |
| | Green Tree Servicing, LLC |
| | 877-256-4871 x 35250 |

*I HEREBY CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL*



### NOTE

KRUEGER
LOAN #:
MIN:

**JUNE 16, 2005**                    **OWINGS MILL**                    , California
Date                                 City
**11923 WEST TRAIL, SYLMAR, CA 91342**

Property Address

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ **249,000.00**         (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is **ALLIED MORTGAGE GROUP, INC.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2.    INTEREST**
I will pay interest at a yearly rate of **9.500**      %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3.    PAYMENTS**
I will pay principal and interest by making payments each month of U.S. $ **2,093.73**
I will make my payments on the **1ST**    day of each month beginning on **AUGUST 1, 2005**
I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on **JULY 1, 2020**            , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at   **7 BALA AVE., STE. 108, BALA CYNWYD, PA 19004**
different place if required by the Note Holder.                                        or at a

**4.    BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of **15** calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be **5.000**      % of my overdue payment, but not less than U.S. $           and not more than U.S. $           . I will pay this late charge only once on any late payment.
(B) Notice From Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

CALIFORNIA – SECOND MORTGAGE – 6/84 – FNMA/FHLMC UNIFORM INSTRUMENT
DOCUKCA1
DOCUKCA1.VTX 04/20/2005                    Page 1 of 3
Form 3905

**5.    THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**6.    BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7.    BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8.    GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any

person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

## NOTICE TO BORROWER
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

— BORROWER — KURT ARNOLD KRUEGER — DATE —

... THE ORDER OF _____
WITHOUT RECOURSE
ALLIED MORTGAGE GROUP, INC.

_____ ROY CHOWDHURY, PRESIDENT

(Sign Original Only)

DOCU6CA3
DOCU6CA3.VTX 04/20/2005          Page 3 of 3                    Form 3905

EXHIBIT "C"

RECORDING REQUESTED BY
2120049-45

FIRST AMERICAN TITLE CO.
OF LOS ANGELES

WHEN RECORDED MAIL TO:

01 1358363

FIRST NATIONWIDE MORTGAGE CORPORATION
POST CLOSING/RECERTIFICATION DEPT.
P.O. BOX 960
FREDERICK, MARYLAND 21705-0960

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## TITLE(S)

## DEED OF TRUST



FIRST AMERICAN TITLE COMPANY LOS ANGELES

RECORD AND RETURN TO:
FIRST NATIONWIDE MORTGAGE CORPORATION
P.O. BOX 960
FREDERICK, MARYLAND 21705-0960
POST CLOSING/RECERTIFICATION DEPT
2180049-42

_____ [Space Above This Line For Recording Data] _____
0019904085

# DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  JULY 6, 2001
together with all Riders to this document.
(B) "Borrower" is
  KURT A KRUEGER AND TERESA A KRUEGER, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
  FIRST NATIONWIDE MORTGAGE CORPORATION DBA CAL FED LENDING

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3005 1/01
CA51 : 08/00     CLOSER ID: P6005              (Page 1)

01 1358363





0019904085

Lender is a **CORPORATION**
organized and existing under the laws of **THE STATE OF DELAWARE**
Lender's address is
**5280 CORPORATE DRIVE, FREDERICK, MARYLAND 21703**

Lender is the beneficiary under this Security Instrument.
**(D)** "Trustee" is
**VERDUGO TRUSTEE SERVICE CORPORATION**

**(E)** "Note" means the promissory note signed by Borrower and dated **JULY 6, 2001**
The Note states that Borrower owes Lender
**TWO HUNDRED SIXTY FIVE THOUSAND FIFTY AND NO / 100**

Dollars (U.S. $          265,050.00          ) plus interest. Borrower has promised to pay this debt
in regular Periodic Payments and to pay the debt in full not later than **AUGUST 01, 2031**
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider   [ ] Condominium Rider         [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider   [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider
[X] Other(s) [specify]  **PREPAYMENT PENALTY RIDER**

**(I)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L)** "Escrow Items" means those items that are described in Section 3.
**(M)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section 5)
for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of
the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to,
the value and/or condition of the Property.
**(N)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
**(O)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

CA52 : 08/00    **CLOSER ID: P6005**    (Page 2)

**01  1358363**

0019904085

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **LOS ANGELES** ;

|  [Type of Recording Jurisdiction] | [Name of Recording Jurisdiction] |

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of **11923 WEST TRL**

[Street]

**SYLMAR** , California **91342-6514** ("Property Address"):

[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA53 : 08/00    **CLOSER ID: P6005**    (Page 3)

**01 1358363**

**0019904085**

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA54 : 08/00    **CLOSER ID: P6005**    (Page 4)

**01 1358363**



0019904085

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA55 : 08/00    **CLOSER ID: P6905**    (Page 5)

01 1358363



0019904083

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

CA56 : 08/00    **CLOSER ID: P6005**    (Page 6)

01 1358363



0019904035

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA57 : 08/00      **CLOSER ID: P6005**      (Page 7)

01  1358363



0019904085

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA58 : 08/00     **CLOSER ID: P6005**     (Page 8)

01  1358363



0019904088

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.   All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third

CA59 : 08/00     CLOSER ID: P6005     (Page 9)



01 1358363

0019904085

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA60 : 08/00     **CLOSER ID: P6005**     (Page 10)

## 01 1358363



0019904089

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

CA61 : 08/00    **CLOSER ID: P6005**    (Page 11)



01 1358363

0019904085

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   20. Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   21. Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CA62 : 08/00     CLOSER ID: P6005     (Page 12)



01  1358363

0019904085

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes**

CA63 : 08/00  **CLOSER ID: P6005**  (Page 13)

01 1358363



0019904085

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWERS:**

_____ (Seal)
KURT A KRUEGER                        - Borrower

_____ (Seal)
TERESA A KRUEGER                      - Borrower

_____ (Seal)
                                      - Borrower

_____ (Seal)
                                      - Borrower

_____ (Seal)
                                      - Borrower

_____ (Seal)
                                      - Borrower

CA64 : 08/00     **CLOSER ID: P6005**        (Page 14)

01 1358363



0019904085

**WITNESSES:**

_____          _____
                    - Witness                              - Witness

_____ [Space Below This Line for Acknowledgment] _____

STATE OF *California*          COUNTY OF *Los Angeles*
On *July 11, 2001* before me, *Jocelyn Rose, Notary Public*
personally appeared

*KURT A. KRUEGER  AND  TERESA A. KRUEGER*

*proved based on satisfactory evidence*
personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

   WITNESS my hand and official seal.

                              *Jocelyn Rose*                (Seal)

CA65 : 08/00     **CLOSER ID: P6005**     (Page 15)



JOCELYN ROSE
Commission # 1358369
Notary Public - California
Los Angeles County
My Comm. Expires Nov 14, 2004

01 1358363



EXHIBIT "A"

**LOT 425, TRACT NO. 7342, AS PER MAP RECORDED IN BOOK 90, PAGES 24-26 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**AP# 2526-009-003**



**LOAN # 0019904085**

01 1358363



## PREPAYMENT RIDER
### (SECURITY INSTRUMENT)
#### Fixed Rate Note -- Five Year Penalty Period

This Prepayment Rider is incorporated into and shall be deemed to amend and supplement the Mortgage, Trust Deed, Deed of Trust or Security Deed (the "Security Instrument") of the same date executed by the undersigned ("Borrower") to secure Borrower's Note or Fixed Rate Note, as applicable (the "Note") payable to
**FIRST NATIONWIDE MORTGAGE CORPORATION DBA CAL FED LENDING**
(the "Lender").

Additional Covenants.  In addition to the covenants and agreements made in the Security Instrument, Borrower and the Lender further Covenant and agree as follows:

Paragraph 1 of the Security Instrument shall be modified by adding the following to the end of Section 1 entitled "Payment of Principal and Interest, Escrow Items, Prepayment Charges and Late Charges":

Borrower shall have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When Borrower makes a prepayment, Borrower will tell the Lender in writing that Borrower is doing so.  Borrower may not designate a payment as a prepayment if Borrower has not made all the monthly payments due under the Note.

The first sixty months of the Loan term is called the "Penalty Period."  In any consecutive twelve month period during the Penalty Period, Borrower may prepay up to 20% of the original principal amount of the Note without paying a penalty.  If the Borrower makes a prepayment in excess of 20% of the original principal balance within any consecutive twelve month period during the Penalty Period, Borrower will pay a penalty.  The penalty will be equal to six (6) months advance interest on the amount prepaid in excess of 20% of the original principal amount of the Note.

No prepayment penalty will be assessed for any prepayment made after the Penalty Period.  Lender will waive the prepayment penalty if: (a) the prepayment is concurrent with the sale of the Property and (b) Borrower provides evidence satisfactory to Lender of such Sale.

The Lender will use prepayments to reduce the amount of principal that is owed under the Note.  However, the Lender may apply a prepayment to the accrued and unpaid interest on the prepayment amount, before applying the prepayment to reduce the principal amount of the Note.  If Borrower makes a partial prepayment, there will be no changes in the due dates or in the amount of Borrower's monthly payments unless the Lender agrees in writing to those changes.

M2466 (R02) 01/01
PAND# M2466     Rev. 01-18-01

Page 1 of 2

LOAN #:0019904085

· 01 1358363



The Lender's failure to collect a prepayment penalty at the time a prepayment is received shall not be deemed a waiver of such penalty and any such penalty shall be payable upon demand.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____     _7/11/01_
KURT A KRUEGER                                  Date

_____     _07/11/01_
TERESA A KRUEGER                                Date

_____     _____
                                                Date

_____     _____
                                                Date

M2466 (R02) 01/01
PAND# M2466-2   Rev. 01-18-01          Page 2 of 2

0019904085

01 1358363

EXHIBIT "D"

**This page is part of your document - DO NOT DISCARD**

**05 1514096**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
06/28/05 AT 08:00am**

# TITLE(S) :



L E A D    S H E E T

| FEE | | D.T.T. |
|---|---|---|

FEE $50 F

CODE
20         D.A. FEE Code 20      $ 4.00

CODE
19

CODE
9



**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

2

RECORDING REQUESTED BY:
DANIELLE ALPHA

ALLIED MORTGAGE GROUP, INC.

7 BALA AVE., STE 108

BALA CYNWYD, PA 19004

**05  1514096**

AFTER RECORDING RETURN TO:
ALLIED MORTGAGE GROUP, INC.

7 BALA AVE., STE 108

BALA CYNWYD, PA 19004
ATTN: PETER ZANGHI

PREPARED BY:
DANIELLE ALPHA

ALLIED MORTGAGE GROUP, INC.

*20005377*

---

[Space Above This Line For Recording Data]

DOC ID #: _____

## DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

KRUEGER
LOAN #:  05060053
PIN:
MIN:  100090700050600539

THIS DEED OF TRUST is made this **16TH** day of **JUNE, 2005**            , among the Trustor, **KURT ARNOLD KRUEGER AND TERESA ANNE KRUEGER**

whose address is  **11923 WEST TRAIL, SYLMAR, CA 91342**
                                                                                  , (herein "Borrower"),

**HEAVYWEIGHT TITLE COMPANY**
(herein "Trustee"), and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns.)  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**ALLIED MORTGAGE GROUP, INC.**

("Lender") is organized and existing under the laws of  **PENNSYLVANIA**                            and has an address of **7 BALA AVE., STE 108, BALA CYNWYD, PA 19004**

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **LOS ANGELES**                            , State of California:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

### SEE EXHIBIT "A" ATTACHED

Parcel ID Number:

CALIFORNIA – SECOND MORTGAGE – 1/80 – FNMA/PHLMC UNIFORM INSTRUMENT WITH MERS
DOCU7CA1
DOCU7CA1.VTX 04/21/2005                        Page 1 of 8

which has the address of  11923 WEST TRAIL                    05060053

SYLMAR                          , California  91342                    (herein "Property Address");
[City]                              [Zip Code]
                        [Street]

     TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law of custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

     TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated  JUNE 16, 2005    and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 249,000.00    , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  JULY 1, 2020    ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

     Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record.  Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

     UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

     1.   Payment of Principal and Interest.  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

     2.   Funds for Taxes and Insurance.  Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.  Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

     If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution).  Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents.  Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for the sums secured by this Deed of Trust.

     If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds.  If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

     Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender.  If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

DOCUTCA2
DOCUTCA2.VTX 04/12/2005                        Page 2 of 8

05 1514096

05060053

4

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

DOCUCA3
DOCUCA3.VTX 04/19/2005

Page 3 of 8

05 1514096

05060053

5

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner

DOCU7CAM
DOCU7CAM.VTX 04/19/2005

Page 4 of 8

05 1514096

05060053

prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. Substitute Trustee. Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. Request for Notices. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

REFERENCE IS HEREBY MADE TO THE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES: [Check box as applicable]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Balloon Rider | ☐ 1-4 Family Rider |
| ☐ Condominium Rider | ☐ Planned Unit Development Rider | ☐ Second Home Rider |
| ☐ Bi-Weekly Rider | ☒ Other(s) [specify] PREPAYMENT RIDER/ BALLOON | |

DOCUCAS
DOCUCAS.VTX 04/21/2005

Page 5 of 8

05 1514096

06/26/09

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

05060053

1

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____ in Book _____, Page _____ , records of  LOS ANGELES                                             County, or filed for record with recorder's serial number _____ ,  LOS ANGELES                     County, California, executed by
KURT ARNOLD KRUEGER AND TERESA ANNE KRUEGER

as trustor (or mortgagor) in which  ALLIED MORTGAGE GROUP, INC.

                                      is named as beneficiary (or mortgagee) and  HEAVYWEIGHT
TITLE COMPANY                              as trustee be mailed to  ALLIED MORTGAGE
GROUP, INC.

STE 108, BALA CYNWYD, PA 19004                                at  7 BALA AVE.,

NOTICE:  A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request.  If your address changes, a new request must be recorded.

State of California
County of  LOS ANGELES

On  JUNE 16, 2005           , before me
personally appeared  KURT ARNOLD KRUEGER AND TERESA ANNE KRUEGER

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)  ARE
subscribed to the within instrument and acknowledged to me that  THEY          executed the same in  THEIR      authorized
capacity(ies), and that by    THEIR        signature(s) on the instrument the person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

My Commission Expires:

05 1514096

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.                05060053

_Kurt A Krueger_ _6/16/05_
- BORROWER - KURT ARNOLD KRUEGER    DATE -

_Teresa Anne Krueger_ _6-16-05_
Teresa Anne Krueger

DOCU7CAJ
DOCU7CAJ.VTX 04/19/2005                Page 7 of 8                (Sign Original Only)

05 1514096

6/28/05

State of California
County of __Los Angeles__ }
                          } ss.

05060053

On __6-16-05__, before me __Nichole Sherie Fava__
personally appeared __Kurt Arnold Krueger & Teresa Anne Krueger__

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(This area for official notarial seal)

_____ (Seal)

My Commission Expires: __1-19-08__



NICHOLE SHERIE FAVA
Commission # 1463606
Notary Public - California
Orange County
My Comm. Expires Jan 19, 2008

05 1514096

## Exhibit A

BEING that land situated in the State of California, County of Los Angeles, City of San Fernando, and described as follows:

BEING Lot 425 in Tract No. 7342, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 90, Pages 24 to 26, inclusive of Maps, in the Office of the County Recorder of Los Angeles County, California.

**FOR INFORMATIONAL PURPOSES ONLY**
THE property address being known as No. 11923 West Trail, Sylmar, California 91342.

APN: 2526-009-003

05 1514096

[Space Above This Line For Recording Date ]

KRUEGER
**PREPAYMENT RIDER**   LOAN #: 05060053
MIN:   100090700050600539

THIS PREPAYMENT RIDER is made this 16TH  day of  JUNE, 2005          , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed
(the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's
Note (the "Note") to  ALLIED MORTGAGE GROUP, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
11923 WEST TRAIL
SYLMAR, CA 91342

ADDITIONAL COVENANTS.   In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

Except as provided below, Borrower may make a full prepayment or a partial prepayment of principal at
any time without paying any charge. However, if within the first  TWENTY-FOUR          month(s) after the
date Borrower executes the Note, Borrower will pay a prepayment penalty in the amount of  SIX
month's advance interest on the amount by which the aggregate prepayments (including prepayments occurring as
a result of the acceleration of the maturity of the Note) made within any consecutive twelve month period exceed
TWENTY              percent (  20.000  %) of the original principal amount.

No prepayment penalty will be assessed for any prepayment made after the Penalty Period.

The Note holder's failure to collect a prepayment penalty at the time a prepayment is received shall not
be deemed a waiver of such penalty and any such penalty calculated in accordance with this section shall be
payable on demand.

Do not sign this Prepayment Rider before you read it. This Prepayment Rider provides for the payment
of a charge if you wish to repay the loan prior to the date provided for repayment.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the
property to an unrelated third party after the first  2        year(s) of the term of the Note, no
prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder will evidence
acceptable to the Note Holder of such sale.

DOCUNSB1
DOCUNSB1.VTX 11/12/2004                     *Page 1 of 2*

**05 1514096**

12

05060053

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ 6/16/05
- BORROWER - KURT ARNOLD KRUEGER - DATE -

_____ 6-16-05
Teresa Anne Krueger

05 1514096

13

## BALLOON PAYMENT RIDER
## TO MORTGAGE/DEED OF TRUST
### [30-Year Amortization – Unpaid Balance Due In Full In 15 Years]

KRUEGER
LOAN #: 05060053
MIN:    100090700050600539

        THIS RIDER is made this  16TH        day of  JUNE, 2005        , and is incorporated
into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the
"Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note
(the "Note") to  ALLIED MORTGAGE GROUP, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
11923 WEST TRAIL, SYLMAR, CA 91342

### [Property Address]

Borrower understands that the Note may be transferred by Lender and by Lender's successors and assigns. The
beneficial owner of the Note from time to time is included within the term "Lender."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**BALLOON PAYMENT NOTICE:** This loan is payable in full at the "Maturity Date" stated in the Note.
Borrower must repay the entire principal balance of the loan and unpaid interest then due. Lender is under no
obligation to refinance the loan at that time. Borrower will, therefore, be required to make payment out of other
assets that Borrower may own, or Borrower will have to find a lender, which may be the lender that Borrower
has this loan with, willing to lend the money. If Borrower refinances this loan at maturity, Borrower may have
to pay some or all of the closing costs normally associated with a new loan even if Borrower obtains
refinancing from the same Lender.

Balloon Rider to Mortgage (ARM/ Fixed)
DOCUBR1                                          Page 1 of 2                            Form R304 (10/02/96)
DOCUBR1.VTX  02/19/2004

# 05 1514096

05060053

14

THIS LOAN HAS A BALLOON FEATURE, MEANING THAT THE MATURITY DATE OCCURS AT THE  180  MONTHLY PAYMENT DUE DATE.   THEREFORE, IT IS ANTICIPATED THAT A SUBSTANTIAL UNPAID PRINCIPAL BALANCE WILL REMAIN WHICH BORROWER MUST PAY IN FULL AT THAT TIME.

BY SIGNING BELOW, Borrower acknowledges agreement to the specific provisions of the Note as described in this Note Rider.

_____  6/16/05
- BORROWER -  KURT ARNOLD KRUEGER - DATE

_____  6-16-05
Teresa Anne Krueger

*[Sign Original Only.  Do Not Sign If Blanks In Text Are Not Filled In.]*

Balloon Rider to Mortgage (ARM/ Fixed)
DOCUBRL2
DOCUBRL2.VTX  02/19/2004

Page 2 of 2

Form R304 (10/02/96)

05 1514096